IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGI
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

ROSCOE MCMILLAN,

    Defendant.

CRIMINAL ACTION FILE NO.:

1:23-CR-309-SDG-JKL

## ORDER AND FINAL REPORT AND RECOMMENDATION

This criminal case is before the Court on Defendant Roscoe McMillan's Motion to Dismiss Counts 4 and 5 For Lack of Venue [Doc. 24] and Motion for Bill of Particulars [Doc. 25].  For the reasons that follow, it is **RECOMMENDED** that the motion to dismiss be **DENIED** and it is **ORDERED** that the motion for a bill of particulars be **DENIED**.

## I.    BACKGROUND

The indictment in this case charges Mr. McMillan with one count of wire fraud (Count 1) and four counts of mail fraud (Counts 2 through 5) arising out an alleged insurance fraud scheme where he allegedly purchased life insurance on individuals who were in poor health under false pretenses so he could benefit financially from their deaths.  [Doc. 1.]  Paragraphs 1 through 12 of the indictment explain how the scheme allegedly worked.  Allegedly, from June 2013 through July

2020, "in the Northern District of Georgia and elsewhere," Mr. McMillan submitted fraudulent group life insurance enrollment forms to insurance companies that misrepresented that the person whose life was being insured was "gainfully employed" by Chosen Outreach Ministries, an organization that Mr. McMillian allegedly owned. [*Id.* ¶¶ 1, 5, 6.] In reality, Chosen Outreach Ministries had no office or no place of doing business [*id.*], and "[t]o further the illusion" that Chosen Outreach Ministries employed the insured persons, Mr. McMillan "sometimes" paid policy premiums using money orders purchased in the name of Chosen Outreach Ministries [*id.* ¶ 10]. The indictment also alleges that Mr. McMillan knew and had reason to know that the insured persons were in poor health, but he did not disclose that "vital information" to the insurance companies. [*Id.* ¶ 7.] Relying on the allegedly false and fraudulent information provided on the enrollment forms, the insurance companies issued the requested life insurance coverage. [*Id.* ¶¶ 8, 9.] When each insured person died, Mr. McMillan filed a claim form with the insurance company that had issued life insurance coverage on that person, causing the company to pay fraudulent claim. [*Id.* ¶ 11.] In all, the indictment alleges that the insurance companies paid around $2.5 million in fraudulent claims. [*Id.* ¶ 12.]

Count 1 charges Mr. McMillan with wire fraud under 18 U.S.C. § 1343. [Doc. 1 ¶¶ 13-14.] Specifically, it alleges that around October 9, 2018, "for the

purpose of executing and attempting to execute the scheme and artifice to defraud," Mr. McMillan caused a wire transfer in the amount of $110,724.99 to be sent from Metropolitan Life Insurance Company's bank account at PNC in Ohio to Mr. McMillan's bank account at JPMorgan Chase in Georgia. [*Id.* ¶ 14.]

Counts 2-5 charge Mr. McMillan with mail fraud in violation of 18 U.S.C. § 1341. [Doc. 1 ¶¶ 15-16.] After incorporating the facts alleged in paragraphs 1 through 12 of the indictment, these counts allege that "for the purpose of executing and attempting to execute the scheme and artifice to defraud" Mr. McMillan "aided and abetted by others known and unknown to the Grand Jury, knowingly caused the following matters and things to be delivered by U.S. mail, according to the directions thereon." [*Id.*] In particular:

- Count 2 alleges that on September 27, 2018, a letter from Standard Insurance Company to Mr. McMillan about "G.B.'s policy" was delivered to Mr. McMillan in Lithonia, Georgia;

- Count 3 alleges that on October 10, 2018, a letter from Metropolitan Life Insurance Company to Mr. McMillan also about "G.B.'s policy" was delivered to McMillan in Lithonia;

- Count 4 alleges that on February 23, 2019, a $205 money order purchased in the name of Chosen Outreach Ministries to pay a policy

3

premium was delivered to Lincoln National Life Insurance Co. in
Carol Stream, Illinois; and

- Count 5 alleges that on October 29, 2019, a $200 money order
  purchased in the name of Chosen Outreach Ministries to pay a policy
  premium was sent to Lincoln National Life Insurance Co. in Carol
  Stream, Illinois.

On February 26, 2024, Mr. McMillan filed the motion to dismiss Counts 4
and 5 for lack of venue and the motion for a bill of particulars. [Docs. 24, 25.] The
government has responded. [Docs. 34, 35.] Mr. McMillan has not filed replies and
the deadline has passed. The motions are thus ripe for resolution.

## II.   MOTION TO DISMISS COUNTS 4 AND 5 FOR LACK OF VENUE

Mr. McMillan argues that Counts 4 and 5 of the indictment—which allege
that premium payments were delivered by U.S. mail to Lincoln National Life
Insurance Co. in Illinois—should be dismissed for lack of venue because the
indictment does not allege that the payments were mailed from, received in, or
moved through the Northern District of Georgia. [Doc. 24 at 1.] He also argues
that the government cannot prove that venue is appropriate because discovery
shows that the money orders used to make the payment were purchased in and
mailed from South Carolina. [*Id.* at 1-2.] The government responds that it has

4

sufficiently alleged venue because the first paragraph of the indictment alleges that Mr. McMillan's insurance fraud scheme took place "in the Northern District of Georgia and elsewhere" and this allegation is incorporated by reference into all other counts, including Counts 4 and 5.  [Doc. 34 at 1.]

"The United States Constitution, the Sixth Amendment, and the Federal Rules of Criminal Procedure all guarantee a defendant the right to be tried in the district in which the United States claims he or she committed the crime." *United States v. Spitsyn*, No. 1:20-CR-325-MLB, 2022 WL 500772, at *2 (N.D. Ga. Feb. 18, 2022); *see also* U.S. Const. art. III, § 2, cl. 3 (trial for a crime other than impeachment "shall be held in the State" where the crime was committed); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury **of the State and district where the crime shall have been committed**.") (emphasis added); Fed. R. Crim. P. 18 (stating that a defendant is entitled to be prosecuted in "a district where the offense was committed").  "[V]enue is an essential element of the government's proof at trial." *United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010).

Mr. McMillan faces an uphill battle challenging the sufficiency of the indictment on venue grounds.  "The law . . . in this Circuit is clear: in ruling on a motion to dismiss, a district court is limited to reviewing the face of the indictment

and, more specifically, the language used to charge the crimes." *United States v. Williams*, No. 1:10-CR-150-TCB-AJB, 2010 WL 3488131, at *3 (N.D. Ga. Aug. 2, 2010) (citing *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)); *report and recommendation adopted*, 2010 WL 3488130 (N.D. Ga. Aug. 30, 2010). "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Snipes*, 611 F.3d at 865 (quotation omitted). Thus, "[i]f a grand jury returns a facially valid indictment containing a proper statement of venue, pretrial determination of venue on the merits is improper because the issue is reserved for a jury's determination." *United States v. Ruiz-Murillo*, 736 F. App'x 812, 818 (11th Cir. 2018); *see also Snipes*, 611 F.3d at 866 ("As with resolving other important elements contained in a charge, a jury must decide whether the venue was proper.").

Venue for mail fraud lies "in any of the districts from, through, or into which the item of mail moved." *United States v. Nall*, 146 F. App'x 462, 466 (11th Cir. 2005) (holding that venue was appropriate in the Northern District of Florida, where two fraudulent letters mailed from Alabama passed through the Northern District of Florida to the Middle District of Florida). Here, the indictment alleges that Mr. McMillan committed the insurance fraud scheme "in the Northern District of Georgia and elsewhere." [*See* Doc. 1 ¶ 1.] Though this allegation does not

explicitly link the mail matters that form the basis of Counts 4 and 5 to the Northern District of Georgia, other judges on this Court have held that similar allegation that the charged offenses were committed in this "and elsewhere" are sufficient to allege venue in this district. *See United States v. Thomas*, No. 1:18-CR-141-MLB-AJB, 2021 WL 3674123, at *19 (N.D. Ga. May 17, 2021) (concluding allegation that defendant committed the alleged scheme in the Northern District of Georgia "and elsewhere" was sufficient to allege venue in this district), *report and recommendation adopted*, 2021 WL 2886015 (N.D. Ga. July 9, 2021); *United States v. Viskup*, No. 1:12-CR-263-ODE-JFK, 2013 WL 6858906, at *10 (N.D. Ga. Dec. 30, 2013) (holding that allegations that charged offenses occurred "in the Northern District of Georgia and elsewhere" was sufficient to allege venue in this district), *report and recommendation adopted at id.* at *1-5; *Williams*, 2010 WL 3488131, at *4 (same). As Judge Baverman explained in *Williams*, an allegation that the defendant committed the offenses in the Northern District of Georgia "and elsewhere" is sufficient because

> [u]nder the Federal Rules of Criminal Procedure, an indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Nowhere in Rule 7(c) is there a requirement that the government even plead venue. An indictment need not specify the exact location of the offense, but rather must be sufficiently specific to allege that the crime was committed within the jurisdiction of the court. *United States v. Crews*, 605 F. Supp. 730, 735 (S.D. Fla. 1985); 1 Charles

7

> Allen Wright, Federal Practice & Procedure § 125 (2006).  Inasmuch
> as the indictment alleges that the offenses occurred with the Northern
> District of Georgia, the indictment is properly pleaded.

2010 WL 3488131, at *4.  And so it goes for the indictment here.  The government

has alleged (even if in conclusory fashion) that the mail fraud offenses alleged in

Counts 4 and 5 occurred in the Northern District of Georgia.  This is sufficient and

thus Mr. McMillan's pretrial challenge to venue must be denied.

Mr. McMillan also argues that dismissal is appropriate because the

government in fact cannot show that the mail that forms the basis of Counts 4 and

5 was sent from, travelled through, or was delivered to this district.  But for Mr.

McMillan to prevail on this argument at the pretrial stage, the Court would have to

either make factual findings relating to the charged conduct now (before trial) or

employ some sort of procedural mechanism similar to summary judgment, where

the Court would view the facts in the light most favorable to one of the parties.  The

Court is not authorized to do either of those things.  *See United States v. Critzer*,

951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in

criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency

of the evidence."); *Williams*, 2010 WL 3488131, at *4 ("[I]n ruling on Defendant's

motion to dismiss, the Court cannot address Defendant's contentions that the

Government is unable to prove venue, nor the Government's contrary argument

that it can."). At the conclusion of the government's case-in-chief, Mr. McMillan may move for an acquittal if he believes that the government failed to meet its burden of proving venue in this district. He is not entitled, however, to a pretrial determination of the sufficiency of the evidence. Accordingly, Mr. McMillan's motion should be denied without prejudice to raise it at trial.

For these reasons, is it **RECOMMENDED** that Mr. McMillan's motion to dismiss Counts 4 and 5 for lack of venue [Doc. 24] be **DENIED**.

## III.   MOTION FOR BILL OF PARTICULARS

Federal Rule of Criminal Procedure 7(f) authorizes the Court to direct the government to file a bill of particulars. "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir.) (quotation omitted). General discovery is not a valid reason for seeking a bill of particulars, *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981), nor is it "'designed to compel the government to [provide a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial,'" *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (quoting *United States v. Burgin*, 621 F.2d 1352,

1359 (5th Cir. 1980)[1]).  Further, "the defendant [is not] entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection."  *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).  "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars," and as a result, the "mere statement that the defendant will be prejudiced . . . is insufficient."  *United States v. Reddy*, No. 1:09-CR-0483-ODE-AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998)), *report and recommendation adopted in relevant part*, 2010 WL 3211029 (N.D. Ga. Aug. 11, 2010); *see also United States v. Blitch*, No. 5:08-CR-40(HL), 2009 WL 973359, at *5 (M.D. Ga. Apr. 9, 2009) (citing *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979)).  The grant or denial of a bill of particulars rests within the sound discretion of the trial court.  *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987); *Colson*, 662 F.2d at 1391.

---

[1] Decisions of the Fifth Circuit issued on or before September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Mr. McMillan moves for a bill of particulars as to the following:

1. the definition of the term "gainfully employed" in paragraph 6 of the indictment and the basis for the assertion that persons were not "gainfully employed";

2. the identity of the false representations referred to in paragraph 6 of the indictment;

3. the identity of applicable policies that required insured persons to be in good health or to disclose vital health information;

4. how failing to disclose that insured persons were in poor health was either false or material to the alleged scheme;

5. the information that the insurance companies relied on that was allegedly false;

6. how the government calculates the loss amount of $2.5 million and the identity of the companies that incurred the alleged losses;

7. how letters from Standard Insurance and Metropolitan Life Insurance Company that form the basis of Counts 2 and 3 furthered the alleged scheme to defraud or were material to the alleged scheme;

8. the other districts in which the fraud was allegedly committed;

9.  the details of the alleged scheme that the Government intends to prove at trial; and

10. how, other than the lack of a physical office, Chosen Outreach Ministries was not a valid ministry.[2]

[Doc. 25 at 2-4.]

The government responds that it has provided nearly its entire case file to Mr. McMillan.  [Doc. 35 at 1-2.]  According to the government, before the case was indicted, it provided Mr. McMillan with an "FBI spreadsheet" that identifies each allegedly fraudulent life insurance claim and the name of the respective insurance company; the name of the insured person who allegedly worked for Chosen Outreach Ministries and their dates of alleged employment; each insured person's date of birth, cause of death, and alleged relationship with Mr. McMillan; the names of seven individuals who were listed as co-beneficiaries with Mr. McMillan; the total amount of the alleged fraudulent claim paid on each policy; and how the alleged fraudulent proceeds were divided among Mr. McMillan and the other beneficiaries.  [*Id.*]  The government further represents that the discovery it produced includes the documents Mr. McMillan allegedly submitted and caused

---

[2] This list combines Plaintiff's requests, some of which were duplicative, that were labeled as 1-8 and (a)-(d) in his motion.  [*See* Doc. 25 at 2-4.]

others to submit to the life insurance companies as well as investigative reports prepared by some of those companies. [*Id.* at 1.] In addition, the government has produced early Jencks Act material (despite having no obligation to do so), including all agent investigative reports and all available witness interview summaries. [*Id.* at 7.] In the government's view, "McMillan has as complete a picture of the government's case as it is possible to have." [*Id.* (citation omitted).] Then, in response to the specific requests, the government responds that it is not required to provide more information than what it has already produced. [*Id.* at 8-11.]

After careful consideration of Mr. McMillan's requests, the Court agrees with the government that the motion is due to be denied. As an overall matter, Mr. McMillan does not carry his burden in showing that he will be prejudiced if the information he requests is not provided via a bill of particulars. *See Reddy*, 2010 WL 3210842, at *5. His lone statement that his questions are material to the preparation of his defense is simply insufficient. *See id.* In other words, he fails to explain, at all, how this information is necessary to prevent him from being prejudiced at trial, such that a bill of particulars is necessary. Additionally, his motion boils down to requests for a "detailed exposition of [the government's] evidence" and an explanation of the legal theories upon which it intends to rely at

trial, neither of which are valid reasons for seeking a bill of particulars. *See Roberts*, 174 F. App'x at 477.

These conclusions bear out when analyzing each individual request, which the Court now does in turn. First is Mr. McMillan's request that the government define "gainfully employed" as used in paragraph 6 of the indictment and explain how the insured persons were not "gainfully employed" by Chosen Outreach Ministries (Request 1). Paragraph 6 of the indictment alleges:

> Each enrollment form fraudulently represented that the person whose life was being insured was gainfully employed by Chosen Outreach Ministries. But as the owner of Chosen Outreach Ministries - which had no office and no place of doing business - Defendant MCMILLAN knew and had reason to know that those representations were false.

[Doc. 1 ¶ 6.] It is clear from this paragraph that the government believes that the insured persons were not actually employees of Chosen Outreach Ministries and that Mr. McMillan misrepresented them as such to the insurance companies. This theory is reaffirmed in paragraph 10 of the indictment, which alleges that Mr. McMillan sometimes paid premiums on policies using money orders purchased in the name of Chosen Outreach Ministries "[t]o further the illusion that Chose Outreach Ministries was the employer of the insured persons." [*Id.* ¶ 10.] Accordingly, Mr. McMillan already has been informed with sufficient precision about the alleged scheme of which he is accused of taking part and this request

14

regarding the phrase "gainfully employed" simply seeks "legal definitions . . . and discovery of the government's theory of the case, which is not a proper purpose of a bill particulars." *See United States v. O'Neal*, No. 1:19-CR-00442-LMM-RGV, 2020 WL 6370174, at *3 (N.D. Ga. Sept. 16, 2020), *report and recommendation adopted*, 2020 WL 6364291 (N.D. Ga. Oct. 29, 2020).

Mr. McMillan's other request regarding paragraph 6 of the indictment (Request 2)—that is, for the government to provide the identity of the false representations referred to in paragraph 6—is also a non-starter. Again, the context makes clear that the "representations" at issue were that the persons being insured were gainfully employed by Chosen Outreach Ministries—no further clarification is needed to prevent prejudicial surprise or to allow meaningful opportunities for defense preparation.

Next, Mr. McMillan's requests that the government explain how the life insurance policies obligated the disclosure of vital health information and why his failure to disclose vital information about the poor health of insured persons constituted a misrepresentation (Requests 3 and 4) are also due to be denied because these requests, as the others above, seek a disclosure of legal theories and a level of evidentiary detail that are simply beyond the scope of a bill of particulars.

15

Next, his request that the government be compelled to identify the allegedly false information the insurance companies relied on, apart from that the insured person was "gainfully employed," (Request 5) is also due to be denied. As explained above, the indictment is clear that the misrepresentations included omitting information about the poor health of insured persons, which provides McMillan with sufficient information to understand the charges against him and conduct his own investigation. What's more, the Eleventh Circuit has explained that a defendant is not entitled to "a bill of particulars detailing every single material misrepresentation the government intended to show at trial" because such a request amounts to "a thinly veiled attempt to have the government make a detailed disclosure of the evidence that it planned to present at trial." *United States v. Holzendorf*, 576 F. App'x 932, 935 (11th Cir. 2014) (citing *United States v. Perez*, 489 F.2d 51, 71 (5th Cir. 1973)).

The same goes for McMillan's request for a bill of particulars about how the letters referenced in Counts 2 and 3 relate to the alleged fraud scheme (Request 7). The indictment alleges that in executing and attempting to execute the alleged insurance fraud scheme, Mr. McMillan caused two letters to be sent from Standard

Insurance Company and Metropolitan Life Insurance Company to him.[3]  [Doc. 1 ¶ 16.]  Mr. McMillan seeks an explanation about how those letters either furthered or were material to the insurance fraud scheme.  But whether the government can show that the alleged insurance fraud scheme existed, and that those letters were transmitted in furtherance of that scheme, is a question of proof for trial.  Mr. McMillan is not entitled to a pretrial exposition of the government's "legal theories upon which it intends to rely at trial."  *United States v. Maurya*, 25 F.4th 829, 838 (11th Cir. 2022) (citing *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).

Mr. McMillan's request that the government explain how it calculated a loss amount of $2.5 million (Request 6) is also due to be denied.  For starters, Mr. McMillan misunderstands the indictment to allege that the total loss amount was $2.5 million, when, in fact, the indictment alleges that the total loss amount was "approximately" $2.5 million.  [Doc. 1 ¶ 12.]  At any rate, "he points to no authority saying the United States must—in a bill of particulars—itemize the losses it alleges Defendant caused[.]"  *United States v. Singla*, 692 F. Supp. 3d 1341, 1361 (N.D.

---

[3] Though not alleged in the indictment, Mr. McMillan proffers that in these letters, Standard Insurance Company and Metropolitan Life Insurance Company denied policies.  [Doc. 25 at 3.]

Ga. 2023) (denying motion of bill of particulars for detailed information about specific losses the defendant allegedly caused). In addition, the loss amount is not an element of any of the charged offenses. *See United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) ("The elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme. . . . . A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property."). Since the loss calculation "is not among the elements necessary to establish a violation of any of the statutes with which [Mr. McMillan] is charged," he is not entitled to a bill of particulars as to how the government calculates the loss amount. *See United States v. Shteyman*, No. 10 CR 347 SJ, 2011 WL 2006291, at *4 (E.D.N.Y. May 23, 2011) (denying motion for bill of particulars as to the government's loss calculation where loss amount was not an element of the charged offenses). Finally, the government represents that it has provided a spreadsheet that lists the total amount of each fraudulently-paid claim [Doc. 35 at 2], so it appears that Mr. McMillan has information concerning the government's contentions about loss amount and he is not "entitled to a bill of particulars with respect to information which is already available through other sources." *See Rosenthal*, 793 F.2d at 1227.

18

Mr. McMillan's request that the government identify all the other districts in which the fraud was allegedly committed (Request 8) is also due to be denied because "the language provided in the indictment is sufficient to inform [him] of the location, at least partially, of his alleged fraudulent activity." *United States v. Thomas*, No. 1:13-CR-0241-1-CAP, 2014 WL 2531952, at *12 (N.D. Ga. June 4, 2014). And his request for the details of the alleged scheme that the government intends to prove at trial (Request 9) is vague and appears to be a request for general discovery, which is not the purpose of a bill of particulars. *See Colson*, 662 F.2d at 1391. Finally, Mr. McMillan's request regarding how Chosen Outreach Ministries was not a valid ministry (Request 10) is also inappropriate. The indictment provides sufficient detail about how Mr. McMillan is accused of using the ministry in this scheme, that is, as a listed employer in fraudulent life insurance forms, such that he can prepare for trial. [*See* Doc. 1 at 2-3.]

For these reasons, then, Mr. McMillan's Motion for a Bill of Particulars is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that his Motion to Dismiss Counts 4 and 5 for Lack of Venue [Doc. 24] be **DENIED** and it is

**ORDERED** that Mr. McMillan's Motion for Bill of Particulars [Doc. 25] be **DENIED**.

I have now addressed all referred pretrial matters relating to this defendant and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL.**

IT IS SO ORDERED and RECOMMENDED this 3rd day of July, 2024.

_____

JOHN K. LARKINS III
United States Magistrate Judge

20